(100 N. W. 239.)

---

THONE SALEMONSON v. JULIA THOMPSON.

Opinion filed February 26, 1904.

**Under Section 5630 Rev. Codes 1899, Appellant Alone Can Specify Questions of Fact for Review on Appeal.**

1. Section 5630, Rev. Codes 1899, which governs the trial of actions tried to the court without a jury, gives to appellants the right to specify questions of fact for review upon appeal, but does not con-

fer the same right upon respondents. Specifications of fact inserted in the statement by a respondent, against appellant's objection, will be disregarded.

### Such Specification Must Be Sufficiently Definite to Indicate Evidence to Embody in Statement of Case.

2. A question of fact specified for review in this court under section 5630, Rev. Codes 1899, must be sufficiently definite to enable the respondent to determine, for the purposes of amendment, what evidence should be included in the statement of case.

### Judgment Conclusive of Debt and Its Amount.

3. A judgment regularly rendered and entered by a court of competent jurisdiction is, in the absence of allegation and proof of fraud or collusion, conclusive evidence of the debt and its amount, in an action to try title by a judgment creditor, against an alleged fraudulent grantee of the debtor.

### Judgment Upon Substituted Service Conclusive as to Defendant's Interest in Property Seized.

4. A judgment against a nonresident, where jurisdiction rests only upon service by publication, and the seizure of the debtor's property under a writ of attachment, has the same conclusive effect, to the extent of the debtor's interest in the property seized, as a judgment rendered upon personal service.

### Fraudulent Conveyance — Levy By Creditor Evidence of Election to Treat Transfer Void — Property Fraudulently Conveyed Subject to Levy.

5. Under section 5052, Rev. Codes 1899, "every transfer of property * * * with intent to delay or defraud any creditor or any other person of his demands, is void against all creditors of the debtor. * * *" As between the parties, such transfers are valid; but as to creditors, they are void at their election. The levy of a writ of attachment upon property transferred to defraud creditors is deemed an election by the creditor to treat the conveyance as void. Property so transferred is as much subject to a levy under execution or writ of attachment as though no transfer had been made.

### Valuable Consideration and Honest Debt No Defense Where Intent Is Fraudulent.

6. A conveyance of property by a debtor, not made in good faith, but executed by the grantor and received by the grantee with intent to defraud creditors, is not relieved from the condemnation of the statute by the fact that it was given for a valuable consideration or to pay an honest debt.

Appeal from District Court, Grand Forks county; *Fisk, J.*

Action by Thone Salemonson against Julia Thompson. Judgment for plaintiff, and defendant appeals.

Reversed.

*B. G. Skulason* and *F. B. Feetham,* for appellant.

A conveyance fraudulent as to existing creditors, is fraudulent and may be avoided by subsequent creditors as well. Rev. Codes, 1899 section 5052. Romans v. Maddux, 41 N. W. 763; Day v. Cooley, 118 Mass. 527; McLane v. Johnston, 43 Vt. 48; Nichols v. Ward, 73 Am. Dec. 177; Whitmore v. Woodard, 28 Me. 392; Smyth v. Carlyle, 16 N. H. 464; 14 Enc. of Law. 269.

Defendant seduced by Myrom and pregnant by him, was a creditor at time of fraudulent transfer, if not on account of breach of promise of marriage, at least for the support of her illegitimate child. Ingwaldson v. Skrivseth, 7 N. D. 388, 75 N. W. 772; Soly v. Aasen, 10 N. D. 108; 86 N. W. 108.

The judgment in Thompson v. Myrom, an action for breach of promise and seduction, is conclusive, and makes the defendant herein a creditor, and such judgment cannot be impeached collaterally. 1 Black on Judgments, sections 245, 246, 252 and 294; 16 Am. & Eng. Enc. Law, 394; 17 Am. Eng. Enc. Law, 849.

Defendant became a subsequent judgment creditor in the breach of promise action and can attack the fraudulent transfer made therefor. Soly v. Aasen, supra; Greer v. Wright, 52 Am. Dec. 111 and note.

Myrom, having failed to marry defendant at the time agreed upon, made a second promise which must stand untainted by any suspicion of illegality. If the original promise was illegal, the subsequent ones were good. 4 Am. & Eng. Enc. of Law, 889; Burke v. Shaver, 23 S. E. 749; Spellings v. Parks, 58 S. W. 126; Hotchkiss v. Hodge, 38 Barb. 117; 5 Cyc. Law & Proc. 100; Pyle v. Piercy, 55 Pac. 141.

A fraudulent debtor's interest is attachable. On grounds of public policy he will not be allowed to assail his transfer; as to his creditors his conveyance is a mere nullity. Faber v. Wagner, 10 N. D. 287; 86 N. W. 963; Lockren v. Rustan, 9 N. D. 43, 81 N. W. 60; Westervelt v. Baker, 95 N. W. 793; Westervelt v. Hagge, 85 N. W. 852; 4 Cyc. Law & Proc. 562; Welch v. Ayres, 61 N. W. 635; Blass v. Anderson, 23 S. W. 94; Brasie v. Mpls. Brewing Co., 92 N. W. 340.

When the grantee participates in the fraud, it makes no difference whether he pays full consideration, or how, or to whom, he pays it, the transaction is void. Daisy Roller Mills v. Ward, 6 N. D. 317; 70 N. W. 271; Paulson v. Ward, 4 N. D. 100; 58 N. W. 792; Fluegel v. Henschel, 7 N. D. 276; 74 N. W. 996; Lockren v. Rustan, supra; Morey Bros. v. Stringer, 95 N. W. 978; Foley v. Doyle, 95 N. W. 1067; Rice et al. v. Wood et al., 31 L. R. A. 609, Sweet v. Wright, 10 N. W. 871.

*R. M. Carothers* and *Guy C. H. Corliss,* for respondent.

The payment to the grantor's creditor of the full value of the property alleged to have been fraudulently transferred, protects the grantee. Crowninshield v. Kittridge, 7 Metcf. 520; Steere v. Hoagland, 50 Ill. 377; Clements v. Nicholson, 6 Wall. 299, 18 Law Ed. 786; Sprague v. Ryan, 75 N. W. 390; Vorhees, Miller & Co. v. Blanton, 83 Fed. 234; Bump on Fraudulent Conveyances, section 500; Gottingham v. Greeley-Barnham Grocery Co. 30 So. 560: Crocker v. Huntzicker, 88 N. W. 232; 14 Am. & Eng. Enc. of Law, (2d Ed.) 347; Morrison v. Houck, 93 N. W. 593; Wakeman v. Grove, 4 Paige 23; Goodwin v. McMinn, 53 Atl. 762; Ames v. Blunt, 5 Paige 13; Murphy v. Briggs, 69 N. Y. 446, Hutchins v. Sprague, 4 N. H. 469; Kaupe v. Briggs, 2 Robt. (N. Y.) 459, 79 N. Y. Supp. 161; Roane v. Bank, 1 Head. (Tenn.) 526; Stoddard v. Butler, 7 Paige 163; Stover v. Herington, 7 Atl. 142, 41 Am. Dec. 86; Packer v. Barker, 2 Metcf. 423; Chatterton v. Mason, 86 Md. 236; Pickner v. Wevil, 9 Ala. 305; Wiley v. Knight, 27 Ala. 336; McLear v. Letchford, 60 Miss. 169; Mobile Bank v. Harris, 6 La. Ann. 811.

. A creditor who takes a conveyance from his debtor as security, or in payment, is protected, although such debtor intended by the transaction to defraud his other creditors, and the favored creditor is cognizant of his purpose. Paulson v. Ward, 4 N. D. 100, 58 N. W. 792; 14 Am. & Eng. Enc. Law (2d Ed.) 295.

An existing creditor may take security or property on account of his debt. He does not aid the debtor in converting his property in a kind that he can run away with or conceal, as in the case of a purchase; he merely exercises his right to collect or secure his own debt. The debtor having a legal right to prefer, and the creditor a legal right to take the preference, the motive prompting such preference is immaterial. Bump on Fraudulent Conveyance, 187 (3d Ed.); 14 Am. & Eng. Enc. Law, (2d Ed.) 229.

The attachment, judgment, execution and sale are absolutely void. There was no personal service or appearance, and the only pretense of jurisdiction is the pretended attachment of the land; and this had been conveyed by a valid conveyance. Myrom had no interest to be attached, legal or equitable. As between two judgment creditors, he who first files his bill and serves process obtains an equitable lien upon the property superior to a judgment creditor having a prior judgment. Chittenden v. Brewster, 2 Wall. 191, 17 Law Ed. 839; Burt v. Keyes, 1 Flipp. 61; MaCalmont v. Lawrence, 1 Blatchf. 232; Crawford v. Kirksey, 55 Ala. 282; Dargar v. Waring, 11 Ala. 998; Newell v. Morgan, 2 Harr. 225; Cole v. Mottle, 98 Ill. 58; Lyon v. Robbins, 46 Ill. 276; Kisterson v. Tate, 94 Ia. 665, 63 N. W. 350; Fuqua v. Bank, 35 S. W. 545; Richardson v. Ralfsnyder, 40 W. Va. 15; Hartshorn v. Eames, 31 Me. 93; George v. Williams, 26 Mo. 190; Young v. Gillespie, 12 Heisk. 239; Brooks v. Gibson, 7 Lea. 271; Smith v. Summerfield, 108 N. C. 284.

After a fraudulent conveyance the grantor has no attachable interest in the property. Davidson v. Burke, 32 N. E. 514; Lyon v. Robins, 46 Ill. 272; Rappleye v. Bank, 93 Ill. 396; Miller v. Sherry, 2 Wall. 237, 17 Law Ed. 827; In re Estes, 3 Fed. Rep. 134; Bump on Fraudulent Conveyances, 461, 466, 490, 491 and 492; Preston-Parton Milling Co. v. Dexter Horton & Co. 60 Pac. 412; Doster v. Bank, 77 Am. St. 116.

The sole right of the creditors is to resort to equity to remove the fraudulent obstruction in the way of his enforcing his claim against the property. Rev. Codes, section 5054.

A contract is not lawful which is contrary to good morals. Rev. Codes, sections 3920, 3874.

Cross-examination showed the promise to marry was void, as it was based on the consideration of unlawful sexual intercourse. Boigneres v. Boulon, 54 Cal. 146; Hanks v. Naglee, 54 Cal. 51; Saxon v. Wood, 30 N. E. 797; Burke v. Shaver, 23 S. E. 749; Beaumont v. Reeve, 8 Q. B. 483; Button v. Hibbard, 82 Hun. 289; Baldy v. Stratton, 11 Pa. St. 316; Goodall v. Thurman, 1 Head. 209; Eve v. Rodgers, 12 Ind. App. 623.

Despite the judgment, the grantee may show that the alleged creditor was never a creditor, when such alleged creditor assumes to attack a transfer from his alleged debtor to a third person. Yeand v. Weeks, 53 Am. St. 50; Moore v. Ashton Plantation Co. 30 So. 152; Miller v. Miller, 23 Me. 22; Miller v. Johnson, 27 Md.

6; Botwell v. McClure, 30 Vt. 674; Jenness v. Barry, 17 N. H. 549; Prescott v. Hayes, 43 N. H. 593; Sargent v. Salmond, 27 Me. 539; Church v. Chapin, 35 Vt. 223; King v. Thorp, 26 Ia. 283; Downs v. Fuller, 35 Am. Dec. 393: Vose v. Morton, 50 Am. Dec. 750; Teed v. Valentine, 65 N. Y. 471; Bruggerman v. Hoerr, 7 Minn. 377; Davis v. Davis, 25 Pac. 140; McClenney v. McClenney, 59 Am. Dec. 738; Millar v. Babcock, 29 Mich. 626; Tyler v. Pratt, 30 Mich. 63; Black v. Nease, 37 Pa. St. 433; Farris v. Dunham, 17 Am. Dec. 77.

The grantee is protected if on his own motion he pays the debts of the grantor. Longfellow v. Barnard, 79 N. W. 255; Webb v. Brown, 3 Oh. St. 246.

Young, C. J. .This is an action to determine adverse claims to 160 acres of land situated in Grand Forks county. The complaint is substantially in the form prescribed by chapter 5, p. 9 Laws 1901. The plaintiff alleges that she has an estate in fee simple in the premises, and is in possession; that the defendant claims an interest therein; and prays that said defendant be required to set forth such adverse claim, to the end that its validity and priority may be determined. The defendant in her answer alleges, among other things, that on and prior to the 10th day of October, 1901, the land in question was jointly owned and occupied by the plaintiff and her brother, one Charles O. Myrom, each having an undivided one-half interest; that on the above named date the said Myrom pretended to convey to plaintiff his interest therein by a warranty deed; that on the 20th day of May, 1901, prior thereto, mutual promises of marriage were made and entered between this defendant and the said Charles O. Myrom; that in the month of June, 1901, the said Myrom, under said promise of marriage, seduced the defendant and got her with child, which child was born on the 11th day of March, 1902, and is still living; that said Myrom broke his said contract of marriage, and refused to perform the same; that during the most of the time in question the said Myrom was a member of the family of the plaintiff, which consisted of plaintiff and her husband, Gunder Salemonson; that the contract of marriage and its breach, and the seduction of the defendant by Myrom, and the relations of the defendant to the said Myrom, were known at all times to the plaintiff and her said husband; that after the breach of said promise of marriage, and seduction, and with full knowledge thereof on the part of the plaintiff and her husband, "the said Charles O. Myrom, with

intent to delay the defendant in her demand for damages against him for the breach of said marriage contract, did fraudulently, voluntarily, and without consideration, by the conveyance above described, pretend to transfer to the plaintiff all his interest in said real estate; that the plaintiff's said husband, Gunder Salemonson, acted for and in behalf of the plaintiff in said transaction; that the said transfer was made in anticipation of a suit for damages which the plaintiff, her husband, and the said Charles O. Myrom expected defendant to bring, and for the purpose of covering up the property of said Charles O. Myrom and thereby defeating the claims of this defendant; that the plaintiff and her husband participated in said fraudulent scheme, and were fully cognizant of all the facts above pleaded; that by reason of said fraudulent transfer the defendant has been obstructed in her enforcement by legal process of her right to the real estate in satisfaction of her said demands." The answer further alleges that on the 11th day of March, 1902, the defendant instituted an action against Myrom to recover damages for the breach of his promise of marriage; that on the 13th day of March, 1902, a writ of attachment, issued in aid of said action, was levied upon all the right, title, and interest of Myrom in said land; that on the 1st day of July, 1902, judgment was entered in said action in favor of this defendant in the sum of $5,030.20; that on the 18th day of July, 1902, a writ of execution issued thereon, and on the 13th day of October, 1902, the interest of said Myrom in said real estate was sold to this defendant for the sum of $2,500, and a sheriff's certificate of sale issued to her, which sale was thereafter duly confirmed by the court. The defendant prays, among other things, that Myrom's conveyance to the plaintiff be decreed to be null and void and cancelled of record, and that the sale upon execution to this defendant be declared valid and binding as to Myrom's undivided one-half interest. The plaintiff filed a reply, in which she admits that she and Myrom were the owners of the land as alleged; that Myrom executed the conveyance in question; but denies that it was a pretended or fraudulent conveyance, or was made for the purpose of hindering or defrauding the defendant or any other person; and alleges that it was executed in good faith and for a valuable consideration; "that the interest of said Charles O. Myrom was purchased by Gunder Salemonson, the husband of the plaintiff, and that said Gunder Salemonson caused the said deed of conveyance upon said purchase to be executed to his wife, this plaintiff." The reply also denies that any marriage contract ever existed between

the defendant and Myrom, or that Myrom ever violated any marriage contract or that any action to recover damages was instituted, or that any judgment was recovered, and alleges that all proceedings in said action were utterly without jurisdiction, either over the person of said Charles O. Myrom or of the real estate described in the complaint and answer herein, and that said Charles O. Myrom was never personally served with the summons in said pretended action within the state of North Dakota, and never appeared in said action; that the only service of summons upon him was by publication, and that no property of said Myrom was ever attached in the state of North Dakota in said action. The trial court entered judgment declaring that the attachment, judgment, and execution were null and void, and that the defendant has no estate or interest in the premises. Defendant appeals.

The statement of case, which was settled pursuant to section 5630, Rev. Codes 1899, under which the case was tried, presents an anomalous condition. It includes specifications of fact for retrial in this court on behalf of the respondent as well as the appellant. The respondent injected into the statement, over appellant's objection, six specifications of fact which she desires to have reviewed on this appeal. These specifications must be disregarded. Section 5630, Rev. Codes 1899, prescribes what the statement of case shall contain, and is the source of our authority to review evidence in all cases tried thereunder. That section provides that: "A party desiring to appeal from a judgment in any such action, shall cause a statement of the case to be settled * * * and shall specify therein the questions of fact that he desires the Supreme Court to review, and all questions of fact not so specified shall be deemed on appeal to have been properly decided by the trial court. Only such evidence as relates to the questions of fact to be reviewed shall be embodied in this statement. But if the appellant shall specify in the statement that he desires to review the entire case all the evidence and proceedings shall be embodied in the statement. * * * The Supreme Court shall try anew the questions of fact specified in the statement or in the entire case, if the appellant demands a retrial of the entire case. * * *" This statute does not confer upon a respondent the right to secure a review of the evidence upon any fact. That right is conferred only upon the appellant.

Moreover, we are of opinion that the appellant's specification is insufficient to call for a review of the evidence. It is as follows: "Appellant specifies the following question of fact, which she desires the Supreme Court to review, to wit, was Julia Thompson, the above-named defendant and appellant, a creditor of Charles O. Myrom?" The vice in this question is that it does not present for examination and determination on the evidence any particular fact, but, on the contrary, calls for the deduction of a legal conclusion from indefinite and unknown facts. The trial judge found, as matter of law, that the defendant was not a creditor. We think, on the facts of this case, that the question was properly classified as one of law, and not of fact. The statute above quoted contemplates that the specification of questions of fact for review in this court shall be sufficiently specific to enable the respondent to determine, for the purposes of amendment, what evidence should be included in the statement upon the controverted question of fact. One could only conjecture as to what evidence or facts the appellant would rely upon to sustain her contention that she was a creditor. The case of Douglas v. Richards, 10 N. D. 366, 87 N. W. 600, is in point upon the sufficiency of this specification.

While we are not able to examine the evidence, the findings of fact made by the trial court cover all the questions in controversy, and furnish a sufficient basis for a right disposition of the case. The record contains two sets of findings. The trial court found, at the instance of the plaintiff: "(1) That previous to October 10, 1901, the plaintiff and one Charles O. Myrom was each the owner of an undivided one-half interest in said real estate, and that on said October 10, 1901, the said Charles O. Myrom, for a valuable consideration, executed and delivered to the plaintiff a warranty deed conveying to plaintiff all his said interest in said land; (2) that said conveyance was so executed and delivered by said Charles O. Myrom to this plaintiff, and for the purpose of paying certain of his debts, but with intent to defraud the defendant out of any claim which she might have against said Charles O. Myrom; (3) that the real purchaser of the interest of said Charles O. Myrom in said real estate was Gunder Salemonson, the husband of the plaintiff, and that said Gunder Salemonson purchased the said real estate with intent to defraud the defendant out of any claim which she might have against said Myrom, and with knowledge of such intent on the part of the said Charles O. Myrom, and that said Gunder Salemonson

agreed to pay said Charles O. Myrom, and said Charles O. Myrom agreed to accept, for his undivided one-half interest in said real estate, the sum of fifteen hundred ($1,500) dollars, and that said amount was the reasonable value of his undivided one-half interest in said premises, the said real estate being worth the sum of forty-five hundred ($4,500) dollars, and being incumbered by a mortgage for fifteen hundred ($1,500) dollars; (4) that it was the understanding between Myrom and said Gunder Salemonson that said Salemonson should pay said fifteen hundred ($1,500) dollars by applying the same in extinguishment of the debts of the said Charles O. Myrom, paying to said Charles O. Myrom any surplus there might be after paying his said debts, and that said Gunder Salemonson, after the execution and delivery of said deed, and between that time and March 1, 1902, paid debts of the said Myrom exceeding said sum of fifteen hundred ($1,500) dollars; (5) that, instead of having the deed of conveyance of said land executed to himself, said Gunder Salemonson had said deed executed to his wife, the plaintiff herein, and gave her the land so purchased by him as aforesaid; (6) that subsequent to the execution and delivery of said deed the defendant levied an attachment upon the said real estate, as the property of the said Charles O. Myrom, in an action commenced by her for damages for breach of promise of marriage; and that the said Charles O. Myrom was never served personally within the state of North Dakota, and never appeared in said action, and that the only jurisdiction ever attempted to be obtained in said action over his person or property was by the levy of said attachment on said real estate, and the service of the summons upon him by publication; and that subsequently a judgment was rendered in said action, based entirely upon said attachment and said constructive service of process, and that under said judgment said defendant caused execution to be issued and the said real property sold as the property of said Charles O. Myrom, the said sale being made on the 13th day of October, 1902, and the interest of said Myrom on said sale being purchased by the defendant, and the sheriff's certificate issued by the sheriff to her; that, at the time of the execution and delivery of said deed, the said Charles O. Myrom had broken his marriage contract with the defendant, but that said marriage contract was based upon an immoral consideration, to wit, the consideration that the said Myrom should be permitted to have sexual intercourse with defendant if he would

promise to marry her, and that upon his making defendant said promise, and in consideration thereof, she permitted him to have sexual intercourse with her." The facts found on the request of the defendant are substantially those alleged in her answer hereinbefore set out.

As conclusions of law the trial court found: "(1) That the plaintiff is the owner in fee simple of all of said real estate, and that the defendant has no interest in or lien thereon; (2) that the deed of conveyance from Charles O. Myrom to the plaintiff herein was not a fraudulent conveyance as to this defendant, for the reason that the said defendant had no valid claim for damages against said Myrom; (3) that the defendant was not a creditor of said Charles O. Myrom at the time of the execution and delivery of said conveyance; (4) that the marriage contract, for the breach of which said action was instituted by defendant against said Charles O. Myrom, was a contract void because founded upon an immoral consideration; (5) that plaintiff is entitled to judgment adjudging that the defendant has no interest in or lien upon said premises, and barring and foreclosing her from any interest in or lien thereon."

This case turns upon the answer to two questions, viz.: (1) Was defendant a creditor of Myrom, and (2) was Myrom's deed to the plaintiff void as to his creditors? If either of these questions is answered in the negative, the defendant must fail, for if she is not a creditor she has no standing to attack the conveyance, however fraudulent it may be. And, even though she is a creditor, she cannot prevail if the conveyance is valid as to creditors. The judgment of the trial court is based upon the conclusion that the defendant is not a creditor. We reach the opposite conclusion. The conclusion of the trial court rests entirely upon its finding that the marriage contract, for the breach of which the defendant recovered judgment in her action against Myrom, was based upon an immoral consideration, to wit, her promise to permit him to have sexual intercourse. It has been held in numerous cases that a recovery for the breach of a marriage contract will be defeated upon proper allegation and proof that it was based upon such a consideration. Wharton on Cont. section 373; Story on Cont. section 458; Saxon v. Wood, 4 Ind. App. 242, 30 N. E. 797; Hanks v. Nagle, 54 Cal. 51, 35 Am. Rep. 67; Boigneres v. Boulon, 54 Cal. 146; Steinfeld v. Levy, 16 Abb. Prac. (N. S.) 26; Burke v. Shaver, 92 Va. 345, 23 S. E. 749; Baldy v. Stratton, 11 Pa. 316. Counsel for defendant

do not contend that this is not the law. Their contention is that the fact is otherwise, and that no such promise was made, and in support of this contention they have exhibited in their brief what purports to be all of the evidence upon which the finding rests. Inasmuch as the appellant has not specified this fact for review, we are without authority to examine the evidence to ascertain whether it is or is not true. In our opinion, the fact upon which the case was decided in the district court was not in issue and could not be placed in issue, and was therefore not a material finding in this case. We fully agree with the contention of appellant's counsel that, as matter of law, the judgment rendered in the defendant's action against Myrom for the breach of the marriage contract fixed her character as a judgment creditor, and that the question as to Myrom's legal liability to her, having been adjudged and determined in that action, is not now open to reinvestigation in this case. The decided weight of judicial opinion is to the effect that a judgment rendered by a court of competent jurisdiction, in regular course of judicial proceedings, is, in the absence of allegation and proof of fraud or collusion, conclusive evidence of the debt and its amount in an action by a judgment creditor against an alleged fraudulent grantee of the judgment debtor; and that errors or irregularities in its rendition, or laches in making defense, are determined by the judgment, and cannot be retried in a collateral proceeding against the grantee. See Minnesota Thresher Company v. Schaack, 10 S. D. 511, 74 N. W. 445; Sidensparker v. Sidensparker, 52 Me. 481, 83 Am. Dec. 527; Swihart v, Shuam, 24 Ohio St. 432; Candee v. Lord, 2 N. Y. 269, 51 Am. Dec. 294; Wingate v. Haywood, 40 N. H. 437; Pickett v. Pipkin, 64 Ala. 520; Ferguson v. Kumler, 11 Minn. 104 (Gil. 62); Scott v. Wagon Works, 48 Ind. 75; Strong v. Lawrence, 58 Iowa, 56, 12 N. W. 74; Bump on Fraudulent Conv. (3d Ed.) pp . 576, 577; Freeman Judgm. section 418; Davidson v. Burke, 143 Ill. 139, 32 N. E. 514, 36 Am. St. Rep. 367; Quinn v. People, 146 Ill. 275, 34 N. E. 148; Mattingly v. Nye, 8 Wall. (U. S.) 370, 19 L. Ed. 380; Newman v. Willitts, 60 Ill. 519; Morley v. Stringer (Mich.) 95 N. W. 978; Pabst Brewing Co. v. Jensen, 68 Minn. 293, 71 N. W. 384; Moore & Handley Hardware Co. v. Curry, 106 Ala. 284, 18 South. 46; Bain v. Wells, 107 Ala. 562, 19 South. 774; Burgess v. Simonson, 45 N. Y. 225; Goodnow v. Smith, 97 Mass. 69; Carpenter v. Osborn, 102 N. Y. 552, 7 N. E. 823; Lewis v. Rogers, 16 Pa. 18; Sheetz v.

Hanbest's Ex'rs, 81 Pa. 100; Meckley's Appeal, 102 Pa. 536; Vogt v. Ticknor, 48 N. H. 242; Forist v. Bellows, 59 N. H. 231; Bensimer v. Fell, 35 W. Va. 15, 12 S. E. 1078, 29 Am. St. Rep. 744; Needham v. Wilson (C. C.) 47 Fed. 97; Harrison v. Pender, 44 N. C. 78, 57 Am. Dec. 573; Mosgrove v. Harris, 94 Cal. 162, 29 Pac. 490; McCanless v. Smith 51 N. J. Eq. 505, 25 Atl. 211; Davidson v. Burke, 143 Ill. 139, 32 N. E. 514, 36 Am. St. Rep. 367. See, also, 2 Black, Judgm. section 605, and cases cited. Even in cases where the judgment is not considered conclusive, it is held that the defense of illegality of consideration—for instance, that it is based upon a Sunday contract or a gambling transaction—not having been interposed by the judgment debtor, cannot be taken advantage of when the judgment is collaterally offered in evidence in another action. Jenness v. Berry, 17 N. H. 549; Chicago Driving Park v. West, 35 Ill. App. 496; McCanless v. Smith, 51 N. J. Eq. 505, 25 Atl. 211. It is also well settled that a judgment obtained against a nonresident, where the jurisdiction rests only upon service by publication and the seizure of the debtor's property under a writ of attachment, has the same conclusive effect, to the extent of his interest in the property seized, as a judgment rendered upon personal service. Voorhees v. Jackson, 10 Pet. 449, 9 L. Ed. 490; Cooper v. Reynolds, 10 Wall. 309, 19 L. Ed. 931; Needham v. Willson (C. C.) 47 Fed. 97; Mosgrove v. Harris, 94 Cal. 162, 29 Pac. 490; Kane v. Cook, 8 Cal. 449; Eastman v. Wadleigh, 65 Me. 251, 20 Am. Rep. 695; Banta v. Wood, 32 Iowa, 469; Exchange National Bank v. Clement, 109 Ala. 270, 19 South. 814; Woodruff v. Taylor, 20 Vt. 65; Freeman v. Alderson 119 U. S. 185, 7 Sup. Ct. 165, 30 L. Ed. 372.

In the case at bar, the plaintiff does not assail the judgment for fraud or collusion. Neither, in her reply, does she attack it upon the ground upon which the trial court held it invalid, namely, that the marriage contract upon which it was based rested upon an immoral consideration. Her sole attack is upon the jurisdiction of the court to render it. The grounds alleged in her reply are (and she alleges no others) that there was no personal service upon Myrom, and that no property owned by him was attached. We are of opinion that the findings show jurisdiction. True, there was no personal service, but that was not essential if jurisdiction was established by a valid attachment and publication. If, as to creditors, the land involved in this action was Myrom's when the levy was made, it will be conceded that the court had jurisdiction to render a

judgment in the action which would be valid and binding to the extent of his interest. If it was not, then there was nothing for the jurisdiction of the court to rest upon, and the attachment, judgment, and sale would be nullities. The validity and effect of Myrom's deed is, then, the decisive question as to jurisdiction. It is, we think, entirely clear that it was void as to creditors. As to them it was wholly inoperative as a conveyance. The land, therefore, when seized under the writ, was Myrom's and its seizure established jurisdiction. Our statute (section 5052, Rev. Codes 1899) declares that: "Every transfer of property, * * * with intent to delay or defraud any creditor or any other person of his demands, is void against all creditors of the debtor. * * *" By section 5055, Rev. Codes 1899, the question of fraudulent intent is made "one of fact and not of law." It is expressly found that the deed was executed by Myrom "with intent to defraud the defendant out of any claim which she might have against him," and that the plaintiff's husband purchased the land with like intent. This presents a case of actual fraud participated in by both parties to the conveyance, and the finding of the fraudulent intent is conclusive against its validity as to Myrom's creditors. "A fraudulent conveyance is no conveyance as against the interests intended to be defrauded." The language of Chancellor Kent, just quoted from Sands v. Codwise, 4 Johns. 536, 4 Am. Dec. 308, was approved by Judge Story in Bean v. Smith, 2 Mason, 252, Fed. Cases No. 1,174, 18 Myer's Fed. Dec. 406, who, in speaking of the conveyances involved in that action, said: "The conveyances were in their very concoction fraudulent. They were, therefore, in the language of the statute, 'utterly void' as against creditors, and cannot be permitted to stand as a security for any advances subsequently made, or any pretended debts then due. All the reasons of public policy so forcibly urged in Sands v. Codwise against such an allowance command the court to be rigid in denying to those who are guilty of bad faith any such indulgence. Let them reap the due reward of their own misconduct." Our own court has adopted the same rule as to the effect of deeds fraudulent in fact. See Paulson v .Ward, 4 N. D. 100, 58 N. W. 792; Roller Mill v. Ward, 6 N. D. 317, 70 N. W. 271, and cases cited. The trial court found that the deed "was not a fraudulent conveyance as to this defendant, for the reason that the defendant had no valid claim for damages against Myrom." The sole ground of this conclusion was that the defend-

ant was not a creditor. The conclusion, resting wholly upon an immaterial finding, falls with the finding upon which it is based. Such conveyances, while valid between the parties, are void as to creditors, at their election. The levy of a writ of attachment on the property conveyed is deemed to be a declaration by the creditor of his election to treat the conveyance as void. McKinney v. Bank, 104 Ill. 180; Bostwick v. Blake, 145 Ill. 885, 34 N. E. 38; Hall v. Stryker, 27 N. Y. 596; Allen v. Berry, 50 Mo. 91; McKee v. Gilchrist, 3 Watts, 234. In Hall v. Stryker, supra, it was said, in reference to rights of creditors in the property of a debtor which has been fraudulently conveyed: "The transfer being void as to them, the law considers the property, quoad them, as still the property of their debtor. * * * When the creditor has procured legal process, such as the law allows a creditor to have against the property of his debtor, he has acquired the standing of a creditor in respect to all the property of his debtor; and that which he has conveyed with the intent forbidden by the law (the conveyance being void) is as much his, in the judgment of the law, and as fully subject to the process, as if the conveyance had not been made." In Bostwick v. Blake, supra, it was said that, the moment the writ of attachment is levied upon the property of the debtor, the election of the creditor to treat the conveyance as void is. declared, and the attachment becomes a lien against the property, with the same effect as if the deed had never been made. "The theory of the law is that a fraudulent transfer passes nothing as against creditors. For all purposes of appropriating the property to the satisfaction of their demands, it is to be deemed vested in the debtor. Bump on Fraudulent Conveyances, 465." Having reached the conclusion that Myrom's deed was void as to creditors, it follows necessarily that the land was his when attached, and sustained the jurisdiction of the court to render judgment in the action. The judgment in that action did not settle the question of title, however. "Questions of conflicting titles must be settled in appropriate actions devised for that purpose." Sedgwick & Wait on Trial of Title to Land, section 176; Exchange Bank v. Clement, 109 Ala. 270, 19 South. 814, and cases cited on page 277, 109 Ala., page 816, 19 South.

We cannot agree to the contention that the conveyance is relieved from the condemnation of the statute because Myrom executed it upon "the understanding" that Salemonson would pay

him $1,500 "by paying the same in extinguishment of his debts," and paying the surplus, if any, to him, and subsequently paid debts equivalent in amount to the value of the property. True, a debtor may pay or secure one creditor in preference to another. Section 5050, Rev. Codes 1899, expressly so declares. He may therefore convey his property to one creditor in preference to another, and such conveyances are not, for that reason, void as to creditors. The law does not look with ill favor upon the payment of honest debts, even when payment results in one creditor receiving a preference over another. But this conveyance does` not come within the protection of this doctrine. Waiving the fact that neither the plaintiff nor her husband was in fact a creditor of Myrom, and the fact that not a dollar of his debts was paid by the delivery of the deed, the consideration being merely Salemonson's promise to the grantor to pay them, and the further fact that the "understanding" that the consideration was in part to be paid to Myrom's creditors was a secret arrangement between the grantor and Salemonson and was unknown to the creditors, still the deed must be held void. Not every conveyance to a creditor to pay an honest debt, or for a valuable consideration, is valid as to creditors; it must also be in good faith. Even though given to pay or secure honest debts, the instruments are void if given and received "with the intent to delay or defraud any creditor," and that is the unchallenged fact in this case. The fraudulent intent of the grantor and the complicity of the grantee vitiate the conveyance, even to the extent of depriving the fraudulent grantee of the right to relief in respect to payments made or obligations assumed. The doctrine of the cases, as enunciated in Beidler v. Crane, 135 Ill. 92, 25 N. E. 655, 25 Am. St. Rep. 349, is that: "A transfer of property must not only be upon a good consideration, but it must also be bona fide. Even though the grantee or assignee pays a valuable, adequate and full consideration, yet if the grantor or assignor sells for the purpose of defeating the claims of his creditors, and such grantee or assignee knowingly assists in effectuating such fraudulent intent, or even has notice thereof, he will be regarded as a participator in the fraud, for the law never allows one man to assist in cheating another." In Union Nat. Bank v. Warner, 12 Hun. 306, it was insisted that there was an actual consideration paid by the grantees at the time of the grant by an agreement to pay debts to certain creditors, and that the conveyance

should therefore be sustained. This was denied. The court said that the grantees "accepted the conveyance with the fraudulent design and intent on their part to hinder, delay, and defraud the creditors of the grantor. They were particeps criminis in the corrupt arrangement, and can therefore claim nothing under it, either to their own advantage or to the advantage of any one else. As is stated by Johnson, J., in Briggs v. Merrill, 58 Barb. 389: 'A party bargaining with a debtor, with fraudulent intent, does it at the peril of having that which he receives taken from him by creditors whom he is attempting to defraud, without having any remedy to recover what he parts with in carrying out his bargain. The law will leave him in the snare his own devices have laid.' In such case, actual payment of full value will not protect the fraudulent vendee or grantee against the claim of the creditor. As was said in Wood v. Hunt, 38 Barb. 302, the complicity of the grantee in the fraud of the grantor deprives him of any right to relief in respect to such payment." In support of the doctrine that the payment of a valuable consideration will not alone sustain a conveyance which is made and received with intent to delay or defraud creditors, see particularly, Billings v. Russell, 101 N. Y. 226, 4 N. E. 531; also, May v. Walter, 56 N. Y. 8; Commercial Bank v. Bolton, 87 Hun. 547, 35 N. Y. Supp. 138; Fullerton v. Viall, 42 How. Prac. 294; Goodhue v. Berrien, 2 Sandf. Ch. 630; Hedges v. Payne (Sup.) 17 N. Y. Supp. 809; Howe v. Sommers (Sup.) 48 N. Y. Supp.162; Kurtz v. Lewis Voight & Sons Co. (Mo. Sup.) 75 S. W. 386; Spuck v. Logan (Md.) 54 Atl. 989; Salzenstein v. Hettrick, 105 Ill. App. 99; Eickstaedt v. Moses, Id. 634; Colorado T. & T. Co. v. Acres Com. Co. (Colo. App.) 70 Pac. 954; Hedrick v. Strauss (Neb.) 61 N. W. 928; Landauer v. Mack (Neb.) 61 N. W. 597; Marcus v. Leake (Neb.) 94 N. W. 100; Foley v. Doyle (Neb.) 95 N. W. 1067; Smith v. Schwed (C. C.) 9 Fed. 483; Union Nat. Bank v. Warner, 12 Hun, 306; Pope v. Kingman & Co. (Neb.) 96 N. W. 519; Beidler v. Crane, 135 Ill. 92, 25 N. E. 655, 25 Am. St. Rep. 349; Garland v. Rives, 4 Rand. 282, 15 Am. Dec. 756; Morley v. Stringer (Mich.) 95 N. W. 978; Davis v. Leopold, 87 N. Y. 620; Menton v. Adams, 49 Cal. 620; Stovall v. Bank, 8 Smedes & M. 305, 47 Am. Dec. 85; Pettibone v. Stevents, 15 Conn. 19, 38 Am. Dec. 57; Bump on Fraudulent Conveyances, section 628.

The district court is directed to reverse the judgment appealed from, and to enter judgment in favor of the defendant, declaring

Myrom's deed void as to this defendant, and cancelling the same of record, and confirming the defendant's interest in the premises as prayed for in her answer. All concur.

COCHRANE, J., having been of counsel in the court below, did not participate in the decision, Judge W. J. KNEESHAW, of the Seventh Judicial District, sitting in his place by request.