BANK OF COMMERCE, Respondent, vs. FOWLER, Garnishee, Appellant.

SAME, Appellant, vs. SAME, Respondent.

*April 16 — May 1, 1896.*

*Debtor and creditor: Fraudulent conveyances: Homestead: Rights of collusive purchaser: Sale by him.*

1. The conveyance of a homestead cannot be held fraudulent as against creditors.

2. One who purchases nonexempt property in collusion with the vendor, with intent to hinder and delay creditors of the latter, cannot, as against such creditors, be protected even for the amount actually paid on the purchase.

3. The proceeds of a sale of property by one who purchased it to aid his vendor in defrauding creditors are impressed with a trust in favor of such creditors.

APPEALS from a judgment of the circuit court for Douglas county: R. D. MARSHALL, Circuit Judge. *Affirmed.*

A judgment having been rendered in favor of the plaintiff, the *Bank of Commerce*, against W. E. Moran, Louis G. Moran, and George Taylor, for $2,214.40, and execution having been issued thereon, a garnishee action was commenced in which *Homer T. Fowler* and the Northwestern National Bank were summoned as garnishees of said W. E. Moran, on the ground that they were indebted to or had property belonging to him. The garnishees severally answered, denying such indebtedness, etc., and the plaintiff elected to take issue thereon.

Upon trial the court found, among other things, that, November 15, 1893, W. E. Moran was the owner of a pile driver, scow, and some tools belonging therewith, subject to a mortgage to A. G. Brown, and on that date he caused the same to be conveyed to the garnishee *Homer T. Fowler*, without any consideration other than the payment of $300 to take up said mortgage to said Brown, and with intent,

participated in by the said *Fowler*, to hinder and delay the creditors of the said W. E. Moran; that said *Fowler* had the said property in his possession when served with the garnishee process, and thereafter sold it for $900, and that he could not, by reason of such fraud or collusion, be protected on account of the $300 paid, but was liable, as garnishee, for the full amount for which he sold the property, with interest from the time of said sale; that said W. E. Moran, October 26, 1893, by deed in which his wife joined, conveyed their homestead to said *Fowler*, then the president of the Northwestern National Bank, subject to a mortgage thereon of $2,500, for the purpose of securing the sum of $996.09 then due the said Northwestern National Bank, garnishee, from said Moran, and $400 then advanced to him by the bank, making in all the sum of $1,396.09, and the wife of said Moran joined in the conveyance in consideration of an agreement whereby there was secured to her any surplus that might arise from the sale of the property, over and above said mortgage and the amount due to the bank. Judgment was given in favor of the plaintiff against said *Fowler* for $900 and interest, with costs, from which he appealed, and in favor of said Northwestern National Bank for its costs; the court holding that the property conveyed to *Fowler* was exempt, and it could not be reached to satisfy the plaintiff's judgment, from which part of the judgment the plaintiff appealed.

*John Brennan*, for the plaintiff, contended, *inter alia*, that the conveyance of the homestead to *Fowler* could be be questioned in this case as colorable and not *bona fide*. *Allen v. Perry*, 56 Wis. 186; *Ansorge v. Barth*, 88 id. 553; Thompson, Homesteads, § 417; Wait, Fraud. Conv. §§ 49, 50, and cases cited. *Fowler* was not entitled to be recompensed for the $300 paid Brown. *Ferguson v. Hillman*, 55 Wis. 181, and cases cited; Bump, Fraud. Conv. (3d ed.), 613, 614; *Byrnes v. Volz*, 53 Minn. 110; *Liddle v. Allen*, 90 Iowa,

Bank of Commerce vs. Fowler.

738; *Albee v. Webster,* 16 N. H. 362; *Sidensparker v. Sidensparker,* 52 Me. 481; *Thompson v. Pennell,* 67 id. 159; 8 Am. & Eng. Ency. of Law, 1193.

For the garnishee *Fowler* there was a brief by *Ross, Dwyer & Hanitch,* and oral argument by *Louis Hanitch.* To the point that the defendant and his wife had a right to dispose of their homestead in any way they might see fit, and their creditors could in no way interfere with such disposition, they cited *Rozek v. Redzinski,* 87 Wis. 525; *Ansorge v. Barth,* 88 id. 553; *Carhart v. Harshaw,* 45 id. 340; *Allen v. Perry,* 56 id. 185.

Pinney, J.   1. The case wholly fails to show any ground upon which the plaintiff could have any relief in respect to the conveyance to *Fowler* by the judgment debtor, W. E. Moran, and his wife, of their homestead, which they occupied at the time as such.   The evidence shows that there was secured to Mrs. Moran, by a contemporaneous written agreement from *Fowler,* an option to become the purchaser of the premises in case he should offer to sell the same, and also, in case he should make a sale, that the surplus, after the payment of the $2,500 mortgage and the indebtedness of $1,396.09 to the bank, should belong to her; but, as the property was exempt as a homestead, it is impossible to hold that the disposition thus made of it, with the reservation to Mrs. Moran of the right to repurchase it and, if sold, of a contingent interest in the proceeds of the sale, would render the transaction void, even if colorable or if it amounted in effect to a voluntary assignment for the benefit of creditors. They had a right to sell and convey their homestead in any way or for any purpose they saw fit.   It cannot be predicated of a sale and conveyance or other disposition of a homestead that it is fraudulent and void as against creditors.   *Dreutzer v. Bell,* 11 Wis. 114; *Pike v. Miles,* 23 Wis. 164; *Hibben v. Soyer,* 33 Wis. 319; *Rozek v. Redzinski,* 87 Wis. 525.

The portion of the judgment appealed from by the plaintiff, the *Bank of Commerce*, is therefore affirmed.

2. The appeal of the garnishee *Fowler* involves the question whether his title to the pile driver, scow, and its belongings, which the evidence tends to show was built for and belonged to W. E. Moran, was acquired by *Fowler* in good faith, under the Brown mortgage, or whether he procured and held it for the benefit of and in collusion with the judgment debtor, W. E. Moran, in order to protect it from the claims of his creditors. The circuit court found in favor of the latter contention. As the question involved is one of fact merely, and the circuit court heard the elaborate examination of the garnishee *Fowler*, and possessed advantages for a correct determination of the issues not afforded to us, we will not enter into a discussion of the evidence. It is enough to say that we think the evidence sufficiently shows that the judgment debtor, W. E. Moran, owned the property in question in November, 1893, subject to the debt secured thereon of $300 to Brown, and that *Fowler*, at the request of Moran, took a transfer of the property, with the intent of securing and protecting it, in his hands, for the use and benefit of W. E. Moran and his brother, G. M. Moran, as against the claims of their creditors, and particularly against the claims of the creditors of W. E. Moran. The bill of sale of the pile driver, scow, etc., from Brown to *Fowler*, the garnishee, was signed by W. E. Moran & Co. and G. M. Moran as well. It appears that there was some claim that W. E. Moran and G. M. Moran had been partners under the name of W. E. Moran & Co., but the evidence tends to show that there was no such relation between them in fact. The garnishee *Fowler* testified, in substance, that at the time he acquired title to the property, W. E. Moran and G. M. Moran were insolvent; that the object of the bill of sale was to enable them to go on with their business; that he tried to help them out, and that it was to protect them; that he supposed they wanted to save the property, and wanted him to

buy it of Brown, so some one else would not get it; that the Morans were both in the bank at the time the bill was signed; and that he did not pay G. M. Moran anything for signing it.   The evidence also tends to show that the property cost $1,200, and was really worth much more, but *Fowler* claimed that his title was absolute, and that he was under no obligation to allow either of the Morans to have it or redeem it.  The evidence tended to show that G. M. Moran had no real interest in the property, but was a man without means, and, taken as a whole, upon the question of collusion and fraud between the garnishee *Fowler* and W. E. Moran, was such as to justify the finding of the circuit court.   We think that the finding is supported by the evidence, and that there is no preponderance of evidence against it to warrant this court in reaching any different conclusion.

It was found by the circuit court that the purchase of the property in question was made by *Fowler* in collusion with W. E. Moran, with the intent to hinder and delay the creditors of the latter.   He has no equities, against such creditors, to be protected for the amount he actually paid Brown for such purchase.  *Ferguson v. Hillman,* 55 Wis. 181, 190.  The rule as thus stated has been recognized and adopted, as there shown, by this as well as by other courts, in very many cases cited.   And the proceeds of the property, when sold by such fraudulent purchaser, are impressed with a trust in favor of the creditors in like manner as was the property before the sale.

For these reasons we hold that the judgment of the circuit court was correct.

*By the Court.*— That portion of the judgment of the circuit court appealed from by the garnishee *Homer T. Fowler* is affirmed.

MARSHALL, J., took no part.